IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**JONATHAN LARKIN**                                                           **PLAINTIFF**

**V.**                                      **CIVIL ACTION NO. 3:10cv109-TSL-MTP**

**TRINITY LIGHTING, INC.**                                          **DEFENDANT**

## ORDER DENYING MOTION TO COMPEL COSTS

This matter is before the court on Defendant Trinity Lighting, Inc.'s ("Trinity") Motion to Compel Costs Associated with Restoration of Evidence [79]. Having considered the [79] motion, Trinity's memorandum [80] in support of the motion, Plaintiff Larkin's ("Larkin") response [94], Trinity's reply [98], and all other submissions by the parties, the court finds that the motion should be DENIED.

*Factual Background*

Beginning in or around October 1996, Trinity employed Larkin for the purposes of selling its lighting products. Def.'s Ex. D [79-4] at 1. Larkin was terminated by Trinity in November 2008. Larkin filed the instant suit because he alleged that Trinity failed to make bonus payments to him in 2007 and 2008. Complaint [2] at 2. At the time he was terminated, Larkin had in his possession a laptop computer, desktop computer, and an external hard-drive, which were all supplied by Trinity and on which were files relating to Larkin's employment–all created and stored during the course of Larkin's employment. Def.'s Ex. D [79-4] at 1. Trinity directed Larkin to return these computers due to his termination. Larkin shipped the computers to Trinity, but not before deleting all the files on the computers.

Trinity maintains Larkin had actual knowledge that he was not to delete these files and

that he did so in anticipation of the impending law suit because the files contained evidence of Larkin's breach of fiduciary duty and fraudulent activity during the course of his employment. This breach of fiduciary duty and alleged fraudulent activity are at issue in Trinity's counterclaim against Larkin. Additionally, by and through its counterclaim, Trinity seeks to fully restore the deleted data and recover the associated costs of restoration. Def.'s Amended Answer and Counterclaim [73]. In the instant motion, Trinity seeks to recover costs estimated to be between $8,000 and $10,000 to restore some of the deleted computer data.

To the contrary, Larkin maintains that the files were not deleted in anticipation of the instant suit because he had no knowledge at the time that severance negotiations would be unsuccessful and because he had consulted counsel solely for the purpose of negotiating severance pay. Larkin admits that he deleted files from the computer, but contends that he had no other way of removing his personal information from the computers in order to return the property to Trinity. Larkin contends that all the documents that were contained on the computer were already in the possession of Trinity. He claims that he copied Trinity's officers on virtually every email and transaction and that he has produced all responsive documents asked for by Trinity.

### *Legal Analysis*

A district court has inherent power to sanction a party for destroying evidence "where a party has been prejudiced by the destruction of evidence and by the bad faith conduct of the adversary." *National Medical Enterprise v. Jet East, Inc.,* 1995 WL 136382, *1 (5th Cir. 1995)(citing *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir.1990)). The Fifth Circuit has yet to directly address the standards for the preservation of electronic evidence and the application of

sanctions where spoliation of electronic evidence has occurred. *See Consolidated Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 339 (M.D. La. 2006). However, many courts have recognized a series of *Zubulake* decisions[1] out of the Southern District of New York as having set the standard for electronic evidence-preservation issues. *See e.g., Alcoa*, 244 F.R.D. at 339. In *Alcoa*, the Middle District of Louisiana recognized: "A party can only be sanctioned for destroying evidence that it had a duty to preserve, and such duty 'arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.'" *Id.* (quoting *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 216 (S.D.N.Y.2003)). Failure to preserve such evidence or the destruction or significant alteration of such evidence constitutes spoliation. *Id.* (citation omitted).

When spoliation occurs, the factors considered in imposing sanctions include: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party. *Alcoa*, 244 F.R.D. at 340. "[A]n award of costs and fees deters spoliation and compensates the opposing party for the additional costs incurred." *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp.2d 598, 647 (S.D. Tex. 2010). Trinity contends that Larkin intentionally destroyed evidence with full knowledge that he was not to delete any files belonging to Trinity and with knowledge of an impending law suit. Moreover, Trinity maintains that it is greatly prejudiced by this act because the files were the best means of

---

[1] *Zubulake v. UBS Warburg, LLC*, 217 F.R.D. 309 (S.D.N.Y. 2003); *Zubulake v. UBS Warburg, LLC*, 230 F.R.D. 290 (S.D.N.Y. 2003); *Zubulake v. UBS Warburg, LLC*, 216 F.R.D. 280 (S.D.N.Y. 2003); *Zubulake v. UBS Warburg*, LLC, 220 F.R.D. 212 (S.D.N.Y. 2003); and *Zubulake v. UBS Warburg*, *LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004).

proving the bases of its counterclaims. Finally, Trinity avers that it is not seeking the entire cost of recovering all the deleted files in this motion, but rather it is seeking the reasonable expenses associated with recovery of the retrievable user-created files deleted after Larkin's termination–which Trinity's expert estimates to be between $8,000 and $10,000. Alternatively, Trinity submits to the court that if Larkin is able to "produce a lower estimate from a reputable computer forensic expert and agree that he will not challenge the expertise and recovery tools used...Trinity would have no objection to providing a copy of the computer memory to such expert for restoration of the data with Larkin being held responsible for the reasonable data copying costs." Def.'s Mot. [79] at 9.

Larkin disputes nearly every fact asserted in Trinity's motion. Moreover, Larkin maintains that this motion is in essence a motion for summary judgment and that at this stage in the litigation–before the close of discovery–he does not have sufficient information to respond to the Trinity's factual assertions.[2]

As to the merits of Trinity's motion, Larkin first asserts there was no duty for him to preserve the files on the computers. Before a duty to preserve information in anticipation of litigation arises, the party must have notice that the evidence is relevant to litigation or the party should have known that the evidence is relevant to impending litigation. *Rimkus*, 688 F. Supp.2d at 612.  In addition to communicating with Larkin regarding his duty to preserve files, Trinity maintains that it contacted an attorney–who Trinity believed to be Larkin's legal representative– in an attempt to communicate to Larkin that he was to preserve the computer files. Conversely,

---

[2]With substantial discovery having been conducted (which has included several extensions of the discovery deadline) and with Larkin being the person who deleted the information at issue, the court rejects this assertion.

Larkin asserts that this information was never conveyed to him by the attorney; thus, he had no actual notice. Moreover, Larkin argues that the attorney was never retained for the purposes of litigation, but rather was serving in an advisory role as to Larkin's ongoing severance negotiations with Trinity. Accordingly, Larkin asserts that he had no reason to know that a law suit would be forthcoming. To the contrary, Trinity cites instances where Larkin communicated to Trinity that the attorney he consulted was his "attorney." Def.'s Ex. 1 [98-1] at 12. Trinity further highlights that Larkin has asserted an attorney-client privilege with regard to communications between himself and this attorney. *Id.* at 15-17. Ultimately, Trinity contends the fact that Larkin sought the advice of an attorney and communicated this to Trinity logically dictates that Larkin knew that litigation would be likely.

Larkin further avers that he did not delete the files in bad faith, but rather was responding to Trinity's deadline to return the computer equipment, and in doing so, was forced to delete all of the files because Trinity's "sudden deadline did not permit him sufficient time to remove personal information" and files from the computers. Response [94] at 4. Highlighting his deposition testimony, Larkin argues that at the time the files were deleted he believed he had previously provided copies of the documents related to his employment to Trinity's representatives in the ordinary course of business. Pl.'s Ex. 3 [94-3] at 5-6. However, Trinity argues that Larkin purposely deleted all of the files in bad faith to prevent Trinity from discovering that he had breached his fiduciary duty to Trinity.

Concerning the relevance and resulting prejudice of the deleted files, Trinity believes that recovering the deleted files on the computer is necessary to prove its claims against Larkin and will otherwise be prejudiced in proving its case. "Courts recognize that a showing that the lost

5

information is relevant and prejudicial is an important check on spoliation allegations and sanctions motions." *Rimkus*, 688 F.Supp.at 616. As evidence of the prejudice resulting from the deletion of the files, Trinity points to an email exchange between Larkin and a Quoizel Lighting representative that Trinity believes is proof that Larkin continued to have dealings with Quoizel after Trinity terminated its relationship with Quoizel.[3] Trinity postulates that the evidence of Larkin's continued dealings with Quoizel, as well as evidence that Larkin altered the commission structure, are among the deleted files from Larkin's computers. According to Larkin, Trinity's assertions that the deleted files are relevant to its claims and that the loss of these files prejudice its theory of the case are too "speculative" and "generalized" to warrant sanctions. *Id*. at 617.

Both parties agree that Larkin deleted all of the files on the computers provided to him by Trinity. However, whether Larkin deleted the files in bad faith, whether Trinity has suffered any real prejudice and whether the information to be retrieved is likely to be of any substantial benefit are questions whose answers are far from clear at this point. Morever, questions remain regarding the extent to which the records to be retrieved may duplicate the rather extensive discovery already conducted or in process in this matter.

Upon applying the *Alcoa*[4] factors, the court is not convinced that Trinity has met its burden to warrant the imposition or shifting of retrieval costs as a sanction at this time. Trinity is

---

[3] Larkin sent this email to a Quoizel representative after the relationship between Trinity and Quoizel dissolved, asking for a commission payment and stating that Trinity would not be receiving a share of this payment. Larkin maintains that he intended to share this payment with Trinity, but never secured payment from Quoizel. Def.'s Ex. 1 [79-4].

[4] (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party. *Alcoa*, 244 F.R.D. at 340.

not, at it suggests, ultimately deprived of any information. The information is apparently retrievable, and Trinity may retrieve it at its cost if it chooses to do so.

IT IS, THEREFORE, ORDERED that Defendant's Motion to Compel Costs Associated with Restoration of Evidence [79] is DENIED.

SO ORDERED, this the 20th day of April, 2011.

                                       s/ Michael T. Parker
                                       United States Magistrate Judge